IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEFFEN A. JONES,<br><br>    Petitioner,<br><br>vs.<br><br>DALE ARTUS, Superintendent, Attica Correctional Facility,[1]<br><br>    Respondent. | No. 9:13-cv-00768-JKS<br><br>MEMORANDUM DECISION |

  Steffen Jones, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Jones is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Attica Correctional Facility. Respondent has answered the Petition, and Jones has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  On September 27, 2007, Jones was charged with two counts of second-degree murder, two counts of second-degree criminal possession of a weapon, and one count each of third-degree criminal possession of a weapon, first-degree attempted murder, and second-degree conspiracy. The charges stemmed from the murder of Jermaine Johnson on January 28, 2006, the murder of Daryl Nixon on March 5, 2006, the possession of a loaded firearm on February 14, 2006, the attempt to intimidate a victim on or about September 5, 2007, a conspiracy to kill Tavorus DiTumbule during March and April 2007, and the attempted murder of DiTumbule on April 18, 2007.

---

  [1] Dale Artus, Superintendent, Attica Correctional Facility, is substituted for Stephen Wenderlich, Superintendent, Southport Correctional Facility. FED. R. CIV. P. 25(c).

Prior to trial, the prosecutor indicated that he did not intend to present proof regarding the count charging Jones with intimidating a victim in the third degree, and the court dismissed that charge. Jones also asked the trial court to sever the remaining charges; Jones requested that the court hold a separate trial for each of the five other incidents. Jones argued that it would be unfair to try all counts together. The People opposed dismissal and severance, arguing that the counts were properly joined under New York Criminal Procedure Law ("CPL") § 200.20 on the ground that the murders of Johnson and Nixon were both committed in retaliation to an earlier murder, and that the conspiracy and attempted murder counts involved a witness to Johnson's murder. The court denied severance except for the count charging Jones with possessing a loaded firearm on February 14, 2006.[2]

On February 25, 2008, Jones proceeded to a jury trial on the remaining counts. The People presented 19 witnesses; Jones did not present any. At the conclusion of trial, the jury found Jones guilty of one count of second-degree murder (Johnson), one count of second-degree criminal possession of a weapon, and one count of second-degree conspiracy. He was found not guilty of one count of second-degree murder (Nixon), one count of second-degree weapons possession, and first-degree attempted murder. The trial court subsequently sentenced Jones, as a second felony offender, to an indeterminate term of 25 years to life imprisonment on the murder count, a determinate imprisonment term of 15 years, plus 5 year' post-release supervision, on the weapons possession count, and an indeterminate imprisonment term of 12½ years to 25 years on the conspiracy count. The court ordered the murder and weapons

---

[2] It appears that, after it was severed, the third-degree criminal possession of a weapon count was never prosecuted.

possession sentences to run concurrently with each other and the conspiracy sentence to run consecutively to the murder and weapons possession counts.

Through counsel, Jones appealed his conviction, arguing that: 1) the court erred in denying his motion to dismiss the indictment or sever the counts of the indictment; 2) the conspiracy conviction was against the weight of the evidence and unsupported by legally sufficient evidence; 3) the prosecutor vouched for a witness's credibility and appealed to the jury's sympathy during opening statement; 4) the murder conviction was against the weight of the evidence; and 5) his sentence was harsh and excessive. On November 10, 2011, the Appellate Division issued a reasoned decision unanimously affirming the judgment against Jones in its entirety. *People v. Jones*, 932 N.Y.S.2d 294, 295 (N.Y. App Div. 2011). Jones sought leave to appeal the denial to the Court of Appeals, which was summarily denied on February 2, 2012. *People v. Jones*, 965 N.E.2d 966 (N.Y. 2012).

Jones then filed a *pro se* motion to vacate his sentence pursuant to CPL § 440.20(1). He argued that his trial had not "yet been legally completed" because the court clerk did not "ask the jurors as to whether or not the verdicts announced by the foremen upon counts three, four, and five were their verdicts, and the clerk when checking and recording the verdict, failed in totality to mention the verdicts of <u>not guilty</u> that was announced by the foreman of the juror[s]." Jones similarly argued that his counsel was ineffective at sentencing for failing to move to set aside the verdict on these grounds. Jones further contended that the order of commitment and the certificate of conviction were incorrect and that he was improperly sentenced as a second felony offender. The county court issued a reasoned, unpublished decision denying Jones' motion on

3

March 4, 2013, and the Appellate Division denied Jones' application for leave to appeal the denial on June 11, 2013.

Jones timely filed a *pro se* Petition for a Writ of Habeas Corpus in this Court on June 20, 2013. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Jones asserts five grounds for relief. First, he argues that the trial court abused its discretion in denying his motion to sever or dismiss the counts in the indictment. He next contends that the conspiracy conviction was against the weight of the evidence and unsupported by legally sufficient evidence. Third, Jones alleges that the prosecutor committed misconduct by vouching for a witness and appealing to the jury's sympathy. Jones additionally argues that the convictions relating to Johnson's homicide must be reversed because they are against the weight of the evidence. Finally, Jones asserts that his sentence is harsh and excessive.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially

indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the

state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

### A. Exhaustion

Respondent correctly contends that a number of Jones' claims are unexhausted and procedurally defaulted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of

Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey*, 933 F.2d at 121.

As Respondent argues, Jones did not raise before the state courts in federal constitutional terms his wrongful joinder and excessive sentence claims. Accordingly, these claims are unexhausted. Further, his unexhausted claims are procedurally barred. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991). Because Jones may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review.³ *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

C. Merits

In any event, even if Jones had fully exhausted those claims, he still would not be entitled to relief on them. For the reasons discussed below, the Court also denies relief on the merits of his unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies

---

³ This Court has the discretion, but is not obligated, to stay these proceedings and hold the unexhausted claims in abeyance pending exhaustion in the state courts. *Day v. McDonough*, 547 U.S. 198, 209 (2006); *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). Even if Jones could establish the requisite good cause for failing to exhaust his claims, which does not appear from his filings, *Rhines* would still require that the Court deny his stay request because, as discussed *infra*, the claims are "plainly meritless." *Rhines*, 544 U.S. at 277. Likewise, a stay would be futile because, as discussed *supra*, a New York court would deny the claims as procedurally defaulted.

7

available in the courts of the State."). And as further discussed below, the Court further denies relief on the merits of the claims he exhausted in state court.

Ground 1. *Wrongful Joinder*

Jones first argues that the trial court erred in refusing to sever the counts of the indictment relating to Johnson's murder from the counts relating to Nixon's murder and from those related to the attempted murder of DiTumbule. The Appellate Division rejected this claim as follows:

> The counts related to the murders were properly joined inasmuch as both murders were allegedly perpetrated as the result of a dispute between one group of men that included [Jones] and another group that included the victims, and proof of the offenses related to one murder was material and admissible as evidence-in-chief upon a trial of the offenses related to the other murder. Further, proof of the offenses related to both murders was material and admissible as evidence-in-chief upon a trial of the offenses relating to the attempted murder of the third victim, who gave a statement to the police implicating [Jones] in both murders.

*Jones*, 932 N.Y.S.2d at 294 (citations omitted).

CPL § 200.20(2)(b) provides that two offenses are "joinable" when, "[e]ven though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first." N.Y. CRIM. PROC. LAW § 200.20(2)(b). As an initial matter, to the extent Jones alleges that the trial court erred under CPL § 200.20(2)(b) when it refused to sever the counts, such claim is not cognizable on federal habeas review because it implicates only the proper application of state law. *See Swarthout*, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68. In general, "[j]oinder and severance are questions left

to the discretion of the trial judge; no constitutional question is involved." *Madden v. Fogg*, 501 F.Supp. 243, 246 (S.D.N.Y. 1980).

To elevate a joinder issue to one of constitutional magnitude, a petitioner must show that the denial of severance rendered his trial fundamentally unfair and hence violative of due process. *See, e.g.*, *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993). A habeas petitioner claiming a due process violation based upon joinder of offenses "must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during . . . trial." *Id.* at 377-78. "Substantial prejudice does not simply mean a better chance of acquittal." *United States v. Alvarado*, 882 F.2d 645, 655 (2d Cir. 1989), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137 (1995). Indeed, the Second Circuit has commented that a lower court's determination that joinder does not present a risk of prejudice is "virtually unreviewable." *See United States v. Stewart*, 433 F.3d 273, 314-315 (2d Cir. 2006).

Here, Jones cannot show the level of substantial prejudice required to warrant habeas relief. In his Petition and on direct appeal, Jones summarily states that he was prejudiced by the joinder. But such conclusory contention falls far short of his "onerous burden," *Herring*, 11 F.3d at 378, of establishing that his trial was rendered fundamentally unfair by the joinder. Jones does not contend that his defenses to the crime were antagonistic or that he wished to testify with respect to some counts but not others. Indeed, the verdict finding him not guilty of the Nixon murder or the attempted murder of DiTumbule belies any contention that Jones was prejudiced by the joinder. Jones is therefore not entitled to relief on this ground.

      Grounds 2, 4. *Convictions against the Weight of the Evidence and Unsupported by Legally Sufficient Evidence*

Jones next contends that the conspiracy and Johnson homicide convictions were against the weight of the evidence. He likewise asserts that the conspiracy conviction was unsupported by legally sufficient evidence.

As an initial matter, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review. *See McKinnon v. Superintendent*, *Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted). The Court rejects Jones' weight of the evidence claims on that basis.

Likewise, the Appellate Division's holding that Jones failed to preserve his legal insufficiency claim for appellate review bars federal habeas review here. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding this claim unpreserved for appellate review, the Appellate Division relied upon New York's contemporaneous objection rule, New York CPL § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*,

647 N.E.2d 1243, 1246-47 (N.Y. 1995). As Jones never objected before the trial court to the sufficiency of the evidence, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and that claim is alternatively denied on that basis.

Moreover, even if Jones had properly raised before this Court sufficiency of the evidence claims with respect to his conspiracy and murder convictions, Jones would not be entitled to relief. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system

11

is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

On direct appeal, Jones argued that there was insufficient proof for the conspiracy and murder convictions by attacking the value of the evidence against him and the credibility of the prosecution's witnesses.[4] But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Thus, to the extent that Jones is arguing that the testimony against him is unreliable because of the witnesses' motivation to lie, inconsistencies presented, and lack of corroboration,

---

[4] In the instant Petition, Jones also argues that it made no sense for the jury to acquit him of murdering Nixon but to convict him of murdering Johnson. To the extent that this argument may be construed as a claim that the verdicts were inconsistent, Jones cannot prevail on that claim either. As the Supreme Court has explained, inconsistent verdicts may result from compromise, lenity, or merely mistake. *See United States v. Powell*, 469 U.S. 57, 65 (1984); *see also United States v. Moran-Toala*, 726 F.3d 334, 336 (2d Cir. 2013) ("[I]t is well established that a criminal defendant cannot exploit . . . inconsistency in the jury's verdicts to secure a new trial."). Furthermore, Jones fails to show inconsistency as a review of the record indicates that there was more proof supporting Jones' murder of Johnson than the murder of Nixon.

such arguments ask the Court to make credibility and evidentiary weight determinations that are outside of the scope of habeas review. Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). In this case, the jury heard the recording of a telephone conversation between Jones and Daveon Johnson prior to Johnson's shooting of DiTumbule, which suggested that Johnson agreed with Jones that he would kill DiTumbule. Likewise, the jury heard the testimony of two eyewitnesses that Jones shot Jermaine Johnson. Such evidence was more than sufficient to support Jones' conspiracy and murder convictions. Accordingly, Jones is not entitled to relief on any insufficiency of the evidence claims either.

       Ground 3.     *Prosecutorial Misconduct*

Jones additionally alleges that the prosecutor committed misconduct by vouching for a prosecution witness and appealing to the jury's sympathy.

To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Under this standard, only "egregious" prosecutorial misconduct can give rise to a constitutional claim. *See Miranda v. Bennett*, 322 F.3d 171, 180 (2d Cir. 2003) (quoting *Donnelly*, 416 U.S. at 647-48). A prosecutor's comments constitute "grounds for reversal only when the remarks caused 'actual prejudice.'" *Dunn v. Sears*, 561 F. Supp. 2d 444, 455 (S.D.N.Y. 2008) (citing *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998)). "In

determining whether the prosecutor's comments cause[d] prejudice, [a] court considers three factors: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements.'" *Id*. at 457 (quoting *United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004)).

Jones first claims that the prosecutor improperly vouched for DiTumbule's credibility when he said in his opening statement, "I don't think you will have any difficulty finding that he's credible at this point." It is well-established that "[a]ttorney statements vouching for the credibility of witnesses are generally improper because they imply the existence of" evidence not before the jury. *United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) (quoting *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994)). Prosecutorial "vouching," in particular, is improper because it "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Newton*, 369 F.3d 659, 681 (2d Cir. 2004) (quoting *United States v. Young*, 470 U.S. 1, 18-19 (1985)).

As Respondent argues,"[w]hile the prosecution may not 'vouch' for the credibility of its witnesses, 'the government is allowed to respond to an argument that impugns its integrity or the integrity of its case, and when the defense counsel have attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion.'" *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quoting *United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994)). But, contrary to Respondent's argument, it does not appear that the so-called "invited response" is applicable here since the alleged vouching occurred during the prosecutor's opening statement and before defense counsel had addressed the jury.

Although the prosecution could anticipate that the defense was likely to challenge DiTumbule's credibility, the defense had not yet done so, and the prosecutor should therefore have refrained from making such statement in support of DiTumbule's credibility. While the impropriety of this statement certainly gives the Court pause, "a reviewing court must evaluate the challenged remarks in the context of the trial as a whole." *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994). Here, the comment was brief in a relatively lengthy opening statement and the record suggests that the comment was minor in an otherwise fair proceeding. Moreover, the comment made by the prosecutor did not conflate his own integrity with that of the witness, unlike the conduct held improper in *Floyd v. Meachum*, 907 F.2d 347, 350-51, 354 (2d Cir. 1990), where the prosecutor used her own name and presence as a prosecutor to "invit[e] the jury to view its verdict as a vindication of the prosecutor's integrity rather than as an assessment of guilt or innocence based upon the evidence presented at trial." Likewise, although the trial court overruled defense counsel's objection, he explained, "It's an opening statement . . . . The opening statement is not evidence, ladies and gentlemen." And just prior to the prosecution's opening statement, the judge told the jury, "Now, although the People are represented by the District Attorney, a public official, this does not entitle the People to have any special consideration, nor for that matter any greater consideration than" defense counsel. The jury is presumed to obey the court's instructions. *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993) ("juries are presumed to follow their instructions") (quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Whitten*, 610 F.3d 168, 191 (2d Cir. 2010) ("We presume that juries follow instructions."); *United States v. Sabhnani*, 599 F.3d 215, 240 (2d Cir. 2010). Most importantly, Jones fails to show that his right to a fair trial was violated: the record reflects

15

that the defense was able to extensively and fully cross-examine DiTumbule, and there was sufficient evidence to support the convictions even without DiTumbule's testimony. Thus, this Court does not find unreasonable the Appellate Division's holding that the statement "was not so egregious or improper as to deny [Jones] a fair trial." *Jones*, 932 N.Y.S.2d at 295.

Jones also argues that the prosecutor improperly appealed to the jury's sympathy when he stated that DiTumbule's "life is not the same any more. He doesn't talk the same. He doesn't look the same . . . I think five years probation is sufficient for his cooperation in this case compared to what he went through." But because the Appellate Division also found this claim unpreserved for appellate review, the claim is barred from federal habeas review. *See Harris*, 489 U.S. at 262; *Whitley*, 642 F.3d at 292. In any event, even though Respondent concedes that "the prosecutor should have refrained" from his comments, for the reasons discussed above, the comments did not so "infect[] the trial with unfairness," *Darden*, 477 U.S. at 181, as to warrant relief. Accordingly, Jones is not entitled to relief on his prosecutorial misconduct claims.

Ground 5.    *Harsh and Excessive Sentence*

Finally, Jones claims that his sentence was harsh and excessive. It is well-settled, however, that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). Here, Jones does not dispute that his sentence fell within the state's statutory

guidelines, and thus his harsh and excessive sentence claim is not cognizable on federal habeas review.

And to the extent that Jones' claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1). "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.'" *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)). Here, the sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments." *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment). Accordingly, Jones cannot prevail on his sentencing claim.

## V. CONCLUSION

Jones is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court grants a Certificate of Appealability solely to his claim that the prosecutor improperly vouched for DiTumbule's credibility. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: June 13, 2016.

                                                 /s/ James K. Singleton, Jr.
                                                 JAMES K. SINGLETON, JR.
                                                 Senior United States District Judge